UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PRC Environmental, Inc. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. _____ |
| v. | § | |
| | § | Fed. R. Civ. P. 9(h) – Admiralty |
| Diamond Offshore Drilling, Inc., | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff PRC Environmental, Inc., and for its Complaint for damages for tortious interference with prospective relations and declaratory judgment pursuant to 28 U.S.C. section 2201, *et seq.*, and Federal Rule of Civil Procedure 57, against Defendant Diamond Offshore, Inc., would respectfully show the Court as follows:

**I.
JURISDICTION**

1.1   This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. section 2201, *et seq,*. and involves an actual controversy within the admiralty and maritime jurisdiction of this Court and Rule 9(h) of the Federal Rules of Civil Procedure.   This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. section 1367 pursuant to the doctrine of pendent jurisdiction.

## II.
## VENUE

2.1   Venue is proper in this District pursuant to 28 U.S.C. section 1391 as the events or omissions giving rise to this claim occurred in this District.

## III.
## PARTIES

3.1   Plaintiff PRC Environmental, Inc. ("PRC"), is a Texas corporation doing business in this District.

3.2   Defendant Diamond Offshore Drilling, Inc. ("Diamond Offshore"), is a foreign corporation authorized to do and doing business in the State of Texas, and in this District. Diamond Offshore may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

## IV.
## FACTS

4.1   The *Ocean Prospector*, later known as the *Viking Prospector*, is a self-propelled, semi-submersible drilling rig, built in 1971 (the "Rig"), and is currently moored afloat, all fast alongside, Pier 41, Galveston, Texas, at the facility of Malin International Ship Repair & Drydock, Inc. ("Malin").

4.2    The Rig was previously owned by Diamond.  The Rig was later sold and came to be owned by Viking Prospector Inc., and eventually came to be owned by KTM Services, Inc. ("KTM").

4.3    On March 21, 2011, Gulf Copper & Manufacturing Corporation ("Gulf Copper") filed an action against the Rig in the United States District Court, Galveston Division, Civil Action No. 3:11-cv-00132, seeking payment of a debt for goods and services provided to the Rig, based on a contract between Gulf Copper and KTM (the "Gulf Copper Action").

4.4    In connection with the Gulf Copper Action, the Rig was arrested by Gulf Copper, and notice of the suit and arrest was duly published.

4.5    The Rig was served with process, and appeared.  Multiple parties, including Francisco Moreno ("Moreno") appeared or presented in connection with a claim or interest in the Rig.  Diamond did not appear.

4.6    On July 7, 2011, an Order was issued directing the United States Marshal for the Southern District of Texas (the "Marshal") to sell the Rig "free and clear of all liens, preexisting claims, and encumbrances . . . ."  Notice of this sale, free of encumbrances, was also duly published.

4.7    On July 25, 2011, a sale was held by the Marshal, and Moreno was the high bidder.

4.8     On August 3, 2011, an Order was issued directing the Marshal to issue a Marshal's Bill of Sale to Moreno, and transfer title to Moreno.

4.9     On August 4, 2011, a Bill of Sale was issued by the Marshal, conveying "all right, title and interest, free and clear of all liens, claims, and encumbrances of whatever nature whatsoever," to Moreno.

4.10    After Moreno acquired title to the Rig, PRC and Moreno entered into a joint venture for the purposes of marketing the rig for lease, sale or charter to third parties.

4.11    Pursuant to the joint venture, PRC had expended, and continues to expend, a significant amount of time, money and resources dedicated to the joint venture project, and at present in excess of more than $3,650,000.

4.12    In connection with the joint venture, PRC worked closely with subcontractors to obtain bids for the mooring, drydocking and equipment installation on the Rig to refurbish, upgrade and convert it into a dynamically positioned accommodation vessel, for sale or lease as such.

4.13    In addition, PRC  met with multiple potential interested and qualified investors, performed substantial due diligence, procured an engineering study and worked closely with an offshore engineering, procurement, construction and

installation company to prepare a detailed and thorough investment proposal specifying project logistics and details, which has been disseminated.

4.14   PRC estimates that upon completion of the joint venture project, profits for the sale of the Rig, expected future profits and prospective business opportunities are currently calculated to be at least $258,000,000.

4.15   In the course of PRC performing under the joint venture, Diamond Offshore began to assert, without right or authority, that the Rig could only be sold for scrap, and for no other purpose, and all despite the prior judicial notices of suit against the Rig, arrest of the Rig, and sale of the Rig free of encumbrances, and actual transfer of title to Moreno, free of encumbrances.

4.16   Despite Diamond Offshore's assertion, title to the Rig passed to Moreno free of encumbrances, and any purported limitation on the use or disposition of the Rig is void and unenforceable.

## V.
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

5.1   PRC re-alleges the foregoing paragraphs as though fully again set forth.

5.2   In connection with the joint venture, PRC had been working closely with subcontractors to obtain bids for the mooring, drydocking and equipment

installation on the Rig to refurbish, upgrade and convert it into a dynamically positioned accommodation vessel, for sale or lease as such.

5.3     In addition, PRC met with multiple potential interested and qualified investors, performed substantial due diligence, procured an engineering study and had worked closely with an offshore engineering, procurement, construction and installation company to prepare a detailed and thorough investment proposal specifying project logistics and details, which has been disseminated.

5.4     Diamond's willful and intentional assertion of a limitation on the use and disposition of the Rig, without right or authority, interferes with PRC's prospective business relationships with contractors and investors.

5.5     Such interference has caused PRC to suspend its Rig refurbishment project, including negotiations with prospective contractors and investors, resulting in a loss of at least $258,000,000 in expected profits that would have resulted from the lease of the Rig as an accommodation, as well as other future business opportunities, which it seeks to recover in this case.

## VI.
## DECLARATORY JUDGMENT

6.1      PRC re-alleges the foregoing paragraphs as though fully again set forth.

6.2     A justiciable controversy exists as to the rights and/or status of the parties. PRC asserts the Rig was sold free of encumbrances, including any limitation on the

use or disposition of the Rig. Diamond Offshore asserts there is a limitation on the use and disposition of the Rig.

6.3     PRC seeks a declaration from this Court that title to the Rig passed free of encumbrances, and no limitations on the use or disposition of the Rig now exist.

6.4     PRC further seeks a declaration from this Court that Diamond Offshore has no right to control the present or future use or disposition of the Rig.

## VII.
## PRAYER

WHEREFORE, Plaintiff PRC Environmental, Inc., prays:

a.  That Diamond Offshore Drilling, Inc., be cited to appear and answer;

b.  That this Court enter judgment in favor of PRC Environmental, Inc. and against Defendant, Diamond Offshore Drilling, Inc., for the damages sustained by PRC through Diamond Offshore's interference with prospective business relations, plus such other amount or amounts as may be proven herein, plus interest, costs and attorneys' fees, pursuant to law; and

c.  That this Court declare title to the Rig has passed free of encumbrances, and there are no limitations on its use or disposition;

d.  Diamond Offshore Drilling, Inc., has no right to control the present or future use or disposition of the Rig;

e. PRC Environmental, Inc., shall recover from Diamond Offshore Drilling, Inc., its reasonable and necessary attorneys' fees, costs, and other costs of court incurred in this cause as available by law; and

f. all such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

*/s/ John H. Kim*
**John H. Kim**
TX State Bar No. 00784393
Federal ID No. 15626
4309 Yoakum Boulevard, Suite 2000
Houston, TX 77006
Telephone: 713 522 1177
Facsimile: 888 809 6793
jhk@thekimlawfirm.com

**OF COUNSEL**:

Spagnoletti & Co.
**Francis I. Spagnoletti**
TX State Bar No. 18869600
Federal ID No. 5369
**David S. Toy**
TX State Bar No. 24048029
Federal ID No. 588699
401 Louisiana Street, 8th Floor
Houston, TX 77002
Telephone:  713 653 5600
Facsimile: 713 653 5656
fspagnoletti@spaglaw.com
dtoy@spaglaw.com
and

The Kim Law Firm
**Denise H. Mitchell**
TX State Bar No. 24010933
Federal ID No. 56991
denise@thekimlawfirm.com

ATTORNEYS FOR PLAINTIFF